Public Employee Labor Relations Board
No. 97-837

APPEAL OF NEW HAMPSHIRE
DEPARTMENT OF TRANSPORTATION

(New Hampshire Public Employee Labor Relations Board)

December 29, 1999

*Philip T. McLaughlin*, attorney general (*Kathryn M. Bradley*, assistant attorney general, on the brief and orally), for the State.

*Michael C. Reynolds*, of Concord, for the respondent, State Employees' Association of New Hampshire, Inc.

BRODERICK, J. The petitioner, New Hampshire Department of Transportation (DOT), appeals a ruling of the public employee labor relations board (PELRB) holding that the DOT committed an unfair labor practice by refusing to bargain and unilaterally changing the terms and conditions of employment contrary to RSA 273-A:5, I(e), (i) (1999) when it revoked free turnpike passes for certain DOT employees. We reverse.

Between 1986 and 1996, the DOT issued free turnpike passes to every employee in the bureau of turnpikes, including those who worked at toll booths, rest areas, and State liquor stores on the turnpikes. In all, about 450 passes were distributed. In December 1996, the DOT commissioner sent a memorandum to the administrator of the turnpikes directing that turnpike passes be issued only to those employees who were required to use toll roads to and from their places of employment. In January 1997, while the 1995-1997 collective bargaining agreement (CBA) was in effect, the DOT revoked turnpike pass privileges for approximately 200 employees. The respondent, the State Employees Association of New Hampshire, SEIU Local 1984 (union), filed an unfair labor practice complaint with the PELRB. Following a hearing, the PELRB ruled that the long-standing practice of issuing free turnpike passes to all DOT employees was lawful under RSA 237:12, III (1993), and constituted a term and condition of employment that could not be changed without negotiation. The PELRB ordered the parties to revert to the status quo and immediately commence bargaining. This appeal followed.

On appeal, the DOT argues that because the DOT turnpike pass distribution policy violated RSA 237:12, III, the DOT was not required to negotiate with the union in order to rescind it. The union asserts that the pass distribution policy complied with RSA 237:12, and was a mandatory subject of negotiation because it had become a term and condition of employment by virtue of its nine-year existence.

"We will reverse the findings of the PELRB only where they are erroneous as a matter of law, unjust or unreasonable." *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71, 635 A.2d 465, 466 (1993). Nevertheless, "this court is the final arbiter of the intent of the legislature as expressed in the words of the statute." *Id.* at 70, 635 A.2d at 466. "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (quotation and citation omitted). Moreover, "[a]ll of the sections of a statute must be construed together, and not viewed separately in isolation." *Appeal of N.H. Catholic Charities*, 130 N.H. 822, 828, 546 A.2d 1085, 1089 (1988) (quotation and citation omitted).

RSA 237:12, III provides that the DOT commissioner

shall issue appropriate identification for turnpike employees and employees of state liquor stores on the turnpike,

when said employees have to use the turnpike to get to their places of employment. Such identification shall permit toll-free use of the New Hampshire turnpike system only to the extent required by an employee covered in this paragraph to get to and from his place of employment.

RSA 237:12, IV states that the DOT commissioner

may grant, at his discretion, toll-free use of the turnpike system to any person he deems appropriate . . . provided, however, for those persons granted toll-free use pursuant to this paragraph, the commissioner shall propose legislation for consideration at the next session of the general court. If such legislation is not enacted into law, such exemption shall expire at the end of that particular session.

The first sentence of RSA 237:12, III articulates two conditions precedent for receipt of free toll passes: recipients must (1) be turnpike employees, or employees of State liquor stores on the turnpike, and (2) "have to use the turnpike" to reach their workplace. The statute plainly authorizes free turnpike passes only for turnpike employees and State liquor store employees at locations on the turnpike who have no alternative but to use the turnpike to get to work. By contrast, those for whom commuting on the turnpike is a convenience, but who could use alternative routes to reach their workplace, are not eligible for free turnpike passes under paragraph III.

A restrictive reading of the first sentence of RSA 237:12, III is supported by its second sentence, see Appeal of N.H. Catholic Charities, 130 N.H. at 828, 546 A.2d at 1088 ("[t]he meaning of a statute is determined from its construction as a whole and not by the construction of isolated words and phrases"), which provides that identification badges issued to qualifying employees permit free travel on the interstate only when required to get to and from work. See RSA 237:12, III. If the legislature had intended to make all DOT employees eligible for free turnpike passes whether or not they needed to use the turnpike to reach their workplace, it would not have used the clear and unambiguously restrictive language in paragraph III. See Appeal of Astro Spectacular, 138 N.H. at 300, 639 A.2d at 250 (court will not interpret statute to expand scope of terms used).

This interpretation is further reinforced by the plain meaning of paragraph IV of the statute, which authorizes the commissioner to issue free passes to those not automatically eligible under para-

graph III. *See* RSA 237:12, IV. Passes issued under this paragraph remain valid only until the end of the next legislative session unless a law is enacted to sanction them. *See id.*

■ In this case, the DOT properly determined that certain employees did not qualify for free passes under RSA 237:12, III because they did not "have to" use the State turnpike system to travel to and from work. This category of employees, therefore, could have received free turnpike passes pursuant to only paragraph IV. Accordingly, their passes lapsed by operation of law because no subsequent law was enacted affirming their issuance. *See* RSA 237:12, IV.

The union argues that because the policy providing for general issuance of the passes had been in place for nine years, it had become a bona fide "past practice" that constituted a "term and condition of employment." *See* RSA 273-A:1, XI (1999). Accordingly, it asserts that, as a public employer under RSA chapter 273-A, the DOT could not unilaterally revoke a term and condition of employment without negotiating in good faith. *See* RSA 273-A:5, I(e), (i). This argument is unavailing. While it is true that the DOT policy of issuing passes to all employees persisted for approximately nine years, it violated RSA 237:12. A "past practice" that violates State law cannot be construed as a term and condition of employment subject to mandatory negotiation prior to its alteration or termination. To hold otherwise would require the State to bargain over, and perhaps grant, a privilege that is expressly prohibited by statute.

■ The union also contends that the DOT previously interpreted the statutory phrases "have to" and "required" in RSA 237:12, III to refer to the economic needs of its employees, and that such long-standing interpretation of the statute by the agency charged with its enforcement should constitute evidence of its correct meaning. This argument also is without merit. "Even a long-standing administrative interpretation of a statute is irrelevant if that interpretation clearly conflicts with express statutory language." *Appeal of Rainville*, 143 N.H. 624, 627, 732 A.2d 406, 409-10 (1999) (quotation omitted). Finally, the union's reliance on legislative history to bolster its interpretation of RSA 237:12 is misplaced, as "we will look to legislative history as a guide to meaning only if ambiguity requires choice." *Appeal of Public Serv. Co. of N.H.*, 125 N.H. 46, 52, 480 A.2d 20, 24 (1984).

*Reversed.*

All concurred.